**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

```
-------------------------------------------------------------
S.N., a minor, through her father AHMER SYED    |
NAQVI; AHMER SYED NAQVI,                        |
                    Plaintiffs                  |
        v.                                      |
                                                |
Alejandro Mayorkas, Secretary of the            |
Department of Homeland Security, in his         |
Official capacity; Merrick Garland, United States |
Attorney General In his official capacity;      |
Tracy Renaud, Senior Official Performing        |
Duties of the Director of the United States     |
Citizenship and Immigration Services,           |
In her official capacity, Susan Dibbins, Chief of the |
Administrative Appeals Office of the U.S.        |
Citizenship and Immigration Services of the     |
Department of Homeland Security; Terri Robinson |
Director of the National Benefits Center, In her |
Official Capacity, Defendants                   |
-------------------------------------------------------------
```

**COMPLAINT FOR**
**DECLARATORY JUDGMENT**

Plaintiffs, S.N. by and through her father, Ahmer Syed Naqvi, and Ahmer Syed Naqvi, by and through undersigned counsel, brings this civil action for declaratory judgment against Defendants: Alejandro Mayorkas, in his official capacity as Secretary of the Department of Homeland Security, Tracy Renaud, in her official capacity as Senior Official Performing Duties of the Director of the United States Citizenship and Immigration Services, and Susan Dibbins, in her official capacity as Chief of the Administrative Appeals Office of the U.S. Citizenship and Immigration Services of the Department of Homeland Security, requesting this Court issue a judgment declaring the Beneficiary, S.N, to be an orphan under 8 U.S.C.A. §1101(b)(1)(F), and invalidating the decision of the Administrative Appeals Office, dated December 18, 2020, as arbitrary and capricious, and unwarranted by the facts. Plaintiff hereby alleges as follows:

## INTRODUCTION

1. INA §101(b)(1)(F) defines a child as an unmarried person who is a child, under the age of sixteen at the time a petition is filed in his behalf to accord a classification of immediate relative under section 1151(b) of this title, who is an orphan because of the death or disappearance of, abandonment or desertion by, or separation or loss from, both parents or for whom the sole or surviving parent is incapable of providing the proper care and has in writing irrevocably released the child for emigration and adoption; who has been adopted abroad by a United States citizen and spouse jointly, or by an unmarried United States citizen who is at least 25 years of age, who have or has complied with the preadoption requirements, if any, of the child's proposed residence, p*rovided*, that the Attorney General is satisfied that proper care will be furnished the child if admitted to the United States.

2. The U.S. Supreme Court has held that "the Constitution protects the sanctity of the family precisely because the institution of the family is deeply rooted in this Nation's history and tradition." *See Meyer v. Nebraska,* 262 U.S. 390 (1923); *see also Pierce v. Society of Sisters*, 268 U.S. 510 (1928).

3. The United States Supreme Court has recognized the right of parents to be an active and integral part of their children's lives as "perhaps the oldest of the fundamental liberty interests recognized by [the Supreme] Court." *Traxel v. Granville*, 530 U.S. 57 (U.S. 2000).

4. Mr. Naqvi began the adoption process to start his family in approximately 2004. He duly complied with all pre-adoption requirements, and filed a Form I-600, Petition to Classify Orphan As An Immediate Relative, in 2015. Since that time, he has sought five Orders from the Court of XI Civil/Family Judge & Judicial Magistrate, Karachi South, in Pakistan, in an attempt

to demonstrate compliance with the Defendants' arbitrary and capricious interpretation of INA §101(b)(1)(F) and 8 C.F.R. §204.3.

5. Defendants' arbitrary and capricious application of INA §101(b)(1)(F) and 8 C.F.R. §204.3 have forced Mr. Naqvi's wife, Azma Naqvi, and their young daughter, S.N., to remain outside the United States for the past six years. Mr. Naqvi has needed to travel back and forth as much as possible between the United States and Pakistan, as he remains employed here in the United States, and both Mr. and Mrs. Naqvi remain residents in Somerset, New Jersey, and have a home to maintain there. Mrs. Naqvi also needs regular medical care for a chronic condition, which she can only receive here in the United States. She has also needed to travel back and forth between the United States and Pakistan, as the insurance the couple pays for does not cover medical treatment in Pakistan. This travel, along with maintaining a separate residence in Pakistan, has financially drained the couple.

6. The Administrative Appeals Office has time and again found ways to prevent the family from reuniting despite every effort made by petitioner to show Administrative Appeals Office they merit grant of application. This was done by way of multiple rejections of their petitions due to misinterpretations of the legal requirements and semantic differences which are not material.

7. Therefore, Plaintiffs seek a judgment declaring that S.N., recognized as Plaintiff Ahmer Naqvi's daughter by the Karachi Court, is an orphan under INA §101(b)(1)(F) and 8 C.F.R. §204.3, and invalidating the December 18, 2020, decision by the Administrative Appeals Office denying his Motion to Reopen, as arbitrary and capricious.

## PARTIES

8. Ahmer Syed Naqvi is a United States Citizen residing in Somerset, New Jersey, and the father of S.N. *See* Court Order dated August 15, 2018, recognizing him as S.N.'s father, **Exh. A.** Mr. Naqvi is the petitioner who filed I-600 dated November 12, 2015, on behalf of his daughter, S.N. He sues both on behalf of his minor daughter S.N., and on his own behalf.

9. Defendant, Alejandro Mayorkas, is the Secretary of the Department of Homeland Security, who oversees the United States Citizenship and Immigration Services, which adjudicated Plaintiff's original petition, appeal, and subsequent motions to reconsider and reopen. In this capacity, he has responsibility for the administration of the immigration laws pursuant to 6 U.S.C. § 251, and routinely does and transacts business in the District of New Jersey.

10. Defendant, Merrick Garland, is the Attorney General of the United States of America, and routinely does and transacts business in the District of New Jersey.

11. Defendant, Tracy Renaud, is the Senior Official Performing Duties of the Director of the United States Citizenship and Immigration Services, the agency directly responsible for adjudication of Plaintiff's original petition, Appeal, Motion to Reconsider and Motion to Reopen.

12. Defendant Susan Dibbins is the chief of the Administrative Appeals Office, the Office within the United States Citizenship and Immigration Services that considered Plaintiff Ahmer Naqvi's Appeal, Motion to Reconsider and Motion to Reopen.

13. Defendant Terri Robinson is the Director of the National Benefits Center, the office which processed and approved Plaintiff's original Form I-600.

**STATEMENT OF FACTS**

14. Mr. Naqvi began the adoption process to start his family in approximately 2004 following a traumatic medical experience, which resulted in a third miscarriage for the couple, left Mr. Naqvi's wife unable to bear children. After finding an agency to assist him and his wife, he duly complied with all pre-adoption requirements.

15. Plaintiff filed a Form I-600, Petition to Classify Orphan As Immediate Relative ("orphan petition"), on behalf of the Beneficiary, a citizen of Pakistan, in 2015. In said petition, he presented guardianship orders from XI Civil and Family Judge, Karachi South, issued in January, 2015, and September, 2015.

16. The first Order, dated January 20, 2015, indicated W-Y- and S-F-S- were the biological parents of the Beneficiary and the Beneficiary was abandoned by them to the care of the orphanage Madad Welfare Organization.

17. The second, issued in September of 2015, indicated that W-Y- and S-F-S- were not the biological parents of the beneficiary and had concealed facts in obtaining the first guardianship order.

18. The Form I-600 was approved on July 18, 2016. On January 19, 2018, USCIS received the Form I-600 back from the Embassy of the United States of America in Islamabad, with recommendation for revocation. A Notice of intent to Revoke was issued on March 14, 2018. Plaintiff responded to that notification on April 12, 2018.

19. USCIS revoked the previously-approved petition on April 23, 2018, after the U.S. consulate in Islamabad Pakistan found that the Beneficiary's alleged birth mother and father were both arrested on charges for the abduction and sale of children. The revocation indicated

concern that the Beneficiary may also be an abducted child and found the evidence the Plaintiff

submitted insufficient to overcome inconsistencies.

20. On May 11, 2018, Plaintiff appealed to the Administrative Appeals Office and

produced paperwork indicating that an investigation was conducted which ultimately cleared

S.N.'s alleged mother and father of any criminal wrongdoing. S.N. was taken into custody, but

her biological parents were not found and "in the near future there is no hope of tracing her real

parents." She was released to Plaintiff Ahmer Naqvi. Plaintiff also submitted a third

guardianship order, dated August 15, 2018, appended hereto at **Exh. A,** declaring the Petitioner

and his spouse guardians of the Beneficiary, had irrevocable release to take the Beneficiary to the

United States. That Order specified that publication of notice of guardianship took place and the

Beneficiary was produced before the police department, who conducted a thorough inquiry. That

appeal was dismissed on November 16, 2018, because "the record did not reflect that the

Beneficiary was placed with the Petitioner *after* becoming a ward of the court in Pakistan.

Hence, the Petitioner has not demonstrated that the Beneficiary is an orphan due to desertion by

both parents." *See* **Exh. B.** In that dismissal there was no mention of the requirement for the

specific wording of unconditional divestment of parental rights from the natural parents.

21. Plaintiff then filed a Motion to Reconsider the appeal dismissal on December 19,

2018, explaining that the Beneficiary is an orphan due to the disappearance of both parents. That

Motion was denied on May 21, 2019, because there was no discussion in the court documents of

the ongoing criminal investigation, the family court did not make Beneficiary a ward of the state

due to the disappearance and unconditionally divest the parents of all parental rights, and

because the court did not make a determination that the Beneficiary's parents have

unaccountably or inexplicably passed out of the child's life, and there is no reasonable hope of

their reappearance, and that there has been a reasonable effort to locate them. That denial is appended hereto at **Exh. C.** The denial does not mention unconditional divestment other than in the recital of the orphan definition.

22. Plaintiff filed a Motion to Reopen on December 12, 2019, submitting a fourth guardianship order, dated October 31, 2019, appended hereto at **Exh D,** from the court along with police reports and medical records to request expedited processing due to medical, emotional and financial hardship on both the Plaintiff and his spouse, Mrs. Azma Naqvi. That motion was wrongfully denied on January 29, 2020, claiming that it had not been submitted within the required 33 (thirty-three) days, despite the fact that Plaintiffs had included in the cover letter an explanation of why the relevant law allowed the Administrative Appeals Office to accept the application outside of the thirty-three day timeframe, causing the Plaintiffs to waste time and money in refiling. *See* **Exh. E.**

23. An identical version of that motion was resubmitted on February 5, 2020, and accepted. *See* **Exh. F.**  That motion contained an explicit request to expedite the decision, citing serious medical concerns for Mrs. Naqvi. The Administrative Appeals Office ignored that request to expedite. That motion to Reopen was denied on December 18, 2020, because the fourth guardianship order did not explicitly unconditionally divest the Beneficiary's biological parents of all parental rights over the child and did not make the Beneficiary a ward of the state because of their disappearance. That denial is appended hereto as **Exh. G.**

24. Plaintiffs file the within Complaint for Declaratory Judgment requesting that this Court declare the Beneficiary to be an orphan under 8 U.S.C.A. §1101 (b)(1)(F) and invalidating the agency decision, dated December 18, 2020, as arbitrary and capricious and unwarranted by the facts.

25. Agency action may be reversed under the arbitrary and capricious standard only if the agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." PA Dep't of Human Servs. V. United States, 897 F .3d 497, 504 (3d Cir. 2018) (quoting State Farm, 463 U.S. at 43, 103 S. Ct. 28556.

26. The December 18, 2020, decision demanded a recital of specific wording in the Court Order from Pakistan, but entirely failed to consider that no such process of unconditional divestment of parental rights exists in Pakistani law. *See* Letter from Chishti Law Associates, Clifton, Karachi, at **Exh. H.** The decision also failed to mention that the Plaintiffs' initial 2015 application was granted on July 18, 2016, without any requirement for the specific language of unconditional divestment of parental rights from the biological parents. The decision continues to separate Plaintiff from his wife and daughter on the basis of semantics, as there is no material difference between the wording of the order Plaintiff previously provided, and the definition in 8 U.S.C. 1101(b)(1)(F). Lastly the decision newly requires specific wording that had not formed the basis of any past denials.

27. The December 18, 2020, decision found that Plaintiff did not meet the standard to show that Plaintiff S.N. is properly classified as an orphan because the "court does not unconditionally divest the Beneficiary's parents of all parental rights over her." *See* **Exh. G**. Plaintiff was moved the Court to review, amend, or modify its August 15, 2018, Order for a fifth time and the Honorable Court has clarified that "obviously such irrevocable release was entrusted or awarded when the natural parents of the child explicitly and unconditionally divested of all parental rights over the child." *See* **Exh. H.** However, the Honorable Court

ultimately dismissed Plaintiff's Motion, stating that Pakistani law deprives the court of the jurisdiction to review its own orders. *See* **Exh. I.**  Plaintiffs, who have duly complied with all procedures and processes under Pakistani law to effectuate a legal adoption of S.N., therefore have no further ability to present the semantic verbiage in the form of a court order, as the Defendants request.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

28. It is a generally recognized prudential requirement of administrative law that administrative remedies should be exhausted before an appeal is filed in federal court. However, "the INA does not require aliens to appeal denials of spousal immigration petitions to the BIA before seeking relief in federal court." *Bangura v. Hansen*, 434 F.3d 487, 498 (6th Cir. 2006). *See also* 8 C.F.R. § 103.3(a)(ii) (providing that a party "may" appeal to the BIA).

29. Plaintiffs filed one appeal, one motion to reconsider, and two motions to reopen before the Administrative Appeals Office before the instant complaint. The December 18, 2020, decision does not give the Plaintiff option for further appeal, mentioning only a motion to reopen or reconsider. *See* **Exh. G.**

30. As Plaintiffs have no further appellate options, or other administrative options for redress that they have not used, Plaintiffs have exhausted administrative remedies, despite the fact that they were not required to do so.

## JURISDICTION

31. Jurisdiction is proper under the Federal Declaratory Judgment Act, 28 U.S.C.A. §2201. Additionally, there is federal question jurisdiction under 8 USCA §1101 (b)(1)(F).

32. This matter satisfies both the constitutional inquiry and the prudential inquiry. There is a case in controversy in that Plaintiff is incurring financial damages incurring costs of plane rides, medical insurance, and lodging splitting his time between two countries, and emotional harm in not being able to bring his daughter, Beneficiary Sonya, to the United States. This case satisfies the prudential inquiry because a declaratory judgment is appropriate in that it will "terminate the controversy" giving rise to the proceedings and allow the Plaintiff to proceed with reuniting his family.

## VENUE

33. Venue is properly laid with the United States District Court for the District of New Jersey, under 28 U.S.C. 1391(e)(1)(C), as the Defendants are officers of the United States, it is where Defendants routinely conduct business, and Plaintiff has been domiciled in New Jersey for the last ten years.

## CAUSES OF ACTION

**COUNT ONE: UNDUE GOVERNMENT INTERFERENCE WITH PLAINTIFF'S FOURTEENTH AMENDEMENT LIBERTY INTEREST IN THE CARE, CUSTODY AND CONTROL OF HIS DAUGHTER**

34. Plaintiffs restate and incorporate by reference the allegations contained in the proceeding paragraphs of this Complaint.

35. "The history and culture of Western civilization reflect a strong tradition of parental concern for the nature and upbringing of their children. This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition." *Wisconsin v. Yoder*, 406 U.S. 205, 232 (1972).

36. "It cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Traxel v. Granville*, 530 U.S. 57, 66 (U.S. 2000).

37. The Defendants' arbitrary and capricious interpretation of 8 U.S.C.A. §1101(b)(1)(F) deprives Plaintiff of his fundamental right to make decisions concerning the care, custody, and control of his daughter without even a rational basis to do so. The Defendants' arbitrary and capricious decisions deprived Plaintiff Ahmer Naqvi of the ability to raise his daughter here with him in the United States, the country he now calls home.

38. The Defendants' arbitrary and capricious decisions are not rationally related to any legitimate government interest. A Pakistani court declared that Plaintiff was the father of S.N., declared her to be an orphan under INA §101, and the Defendants acknowledged there were no further concerns of abduction and a reasonable effort had been made to locate the biological parents of S.N. Plaintiffs have provided evidence in the form of an updated court order that not only judicially opines that "irrevocable release was entrusted or awarded when the natural parents explicitly and unconditionally divested of all parental rights over the child," but ultimately dismisses the complaint, thus confirming that no further mechanisms exist for the Plaintiffs to obtain an order with the specific wording that Defendants request, and no further mechanisms for judicial review of their matter inside Pakistan. *See* **Exh. H-I.** The Defendants lack a rational basis to continue to deprive the Plaintiff of his fundamental right to the care, custody, and control of his daughter, because they have already recognized that no further concerns exist that S.N. is an abducted child. Petitioner, having been deprived of being able to raise his child in the United States, having been financially drained dealing with health issues, travel back and forth between the United States and Pakistan, for well over six (6) years

following the initial petition, has clearly not had the freedoms afforded to him for care, custody and control of his child under the 14th amendment. Such a freedom that, with every arbitrary and capricious denial has stripped him of the ability to do so, and was not merited and therefore should be once again afforded to him and his wife by a declaratory judgment of this court.

## COUNT TWO: THE DECEMBER 18, 2020, DECISION WAS ARBITRARY AND CAPRICIOUS AND THEREFORE VIOLATED THE ADMINISTRATIVE PROCEDURES ACT

39. Plaintiffs reinstate and incorporate by reference the allegations contained in the proceeding paragraphs of this Complaint.

40. The Administrative Procedures Act, 5 U.S.C. §702, directs reviewing courts to "hold unlawful and set aside agency action, findings, and conclusions" that are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court."

41. Agency action may be reversed under the arbitrary and capricious standard only if the agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." PA Dep't of Human Servs. V. United States, 897 F .3d 497, 504 (3d Cir. 2018) (quoting State Farm, 463 U.S. at 43, 103 S. Ct. 28556.

42. The December 18, 2020, decision is arbitrary and capricious because it entirely failed to consider an important aspect of the problem. The decision demands a recital of specific wording in the Court Order from Pakistan, but entirely fails to consider that no such process of unconditional divestment of parental rights exists in Pakistani law. See Letter from Chishti Law Associates, Clifton, Karachi, at **Exh. H.** The decision also fails to consider that the Plaintiffs'

initial 2015 application was granted on July 18, 2016, without any requirement for the specific language of unconditional divestment of parental rights from the biological parents. The decision fails to consider that the difference is semantic, and that there is no material difference between the wording of the order and the definition in 8 U.S.C. 1101(b)(1)(F). Lastly the decision fails to consider that prior denials had not required this specific wording from the court order.

43. The December 18, 2020, decision is arbitrary and capricious because it is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. The decision acknowledges that the accused from the Madad Welfare Agency were acquitted under the law, that there was no evidence that the Beneficiary was a victim of abduction and acknowledges that the court states that the "Beneficiary's parents have unaccountably or inexplicably passed out of the Beneficiary's life, that their whereabouts are unknown, there is no reasonable hope of their reappearance, and that there has been a reasonable effort to locate them." The Order from the Pakistani court also states that, "This Order shall have **irrevocable release** of minor S.N. to the plaintiffs." (emphasis added). Recognizing that trafficking is no longer of concern yet refusing to classify plaintiff S.N. as an orphan is an implausible decision, given that they have created a barrier based in entirely semantics which Plaintiffs lack a legal mechanism inside Pakistan to directly address.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants as follows:

44. Declaring Plaintiff Ahmer Syed Naqvi to be the legal father of Plaintiff S.N.;

45. Declaring Plaintiff S.N. to be an orphan under 8 U.S.C.A. §1101(b)(1)(F) and 8 C.F.R. §204.3;

46. Invalidating and reversing the Defendants' December 18, 2020, decision in this matter;

47. Directing the Defendants to reopen Plaintiff's Petition and process it in accordance with this Court's decision; and

48. Awarding any and all such relief as deemed just and warranted.

## <u>CERTIFICATION AND VERIFICATION</u>

I, Aleksandra N. Gontaryuk, Esq., certify pursuant to Local Civil Rule 11.2 that the

matter in controversy in this action is not currently the subject of any other action filed in this

court or in any other court.

I am an attorney admitted to practice in the State of New Jersey. I have reviewed the

foregoing Complaint for Declaratory Judgment and the facts set forth therein. To the extent they

relate to my personal involvement in these matters, they are true to the best of my knowledge,

except as to any matters asserted upon information and belief, which I believe to be true. My

understanding is based in part upon my familiarity with relevant documents and conversations

with persons possessing first-hand knowledge. In accordance with 28 U.S.C. § 1746, I hereby

declare under penalty of perjury that the foregoing is true and correct.

Dated: April 13, 2021

BY: _____

AG Law Firm
*Aleksandra N. Gontaryuk, Esq.*
711 Jersey Avenue, Suite 202
New Brunswick, NJ 08901
Telephone: (908) 336-7550
Email: aleks@aglawnj.com

## **CERTIFICATE OF SERVICE**

I, Aleksandra N. Gontaryuk, Esq., with offices at 711 Jersey Avenue, Suite 202, New Brunswick, NJ 08901, do hereby certify that I mailed the within Complaint for Declaratory Judgment, and within exhibits, via USPS Priority Mail to the following parties at the following addresses:

Alejandro Mayorkas
Office of the General Counsel
U.S. Department of Homeland Security
2707 Martin Luther King Jr. Ave, SE
Mail Stop 0485
Washington, DC 20528-0485

Tracy Renaud
United States Citizenship and Immigration Services
Office of the Chief Counsel
20 Massachusetts Avenue, NW
Room 4210
Washington, DC 20529

Merrick Garland
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Susan Dibbins
U.S. Citizenship and Immigration Services
Administrative Appeals Office
5900 Capital Gateway Drive, MS 2090
Camp Springs, MD 20588-0009

Terri Robinson
National Benefits Center
Attention: Adoptions
Department of Homeland Security
7600 W. 119th St.
Overland Park, KS 66213

Date: 04/13/2021

_____
*Aleksandra N. Gontaryuk, Esq.*

## Index

|   | DESCRIPTION | PAGE |
|---|---|---|
| A | August 15 2018 Guardianship Order | 18 |
| B | November 16 2018 Dismissal Of Plaintiff's Appeal To AAO | 21 |
| C | May 21, 2019 Denial of Motion to Reconsider | 31 |
| D | October 31 2019 Pakistani Order of Guardianship | 34 |
| E | January 29 2020 denial of Motion to Reopen | 42 |
| F | February 2020 Acceptance of Motion | 45 |
| G | December 2020 Decision denying Motion To Reopen | 47 |
| H | Clarification Letter From Plaintiff's Pakistani Attorneys | 53 |
| I | February 2021 Pakistani Order Dismissing Plaintiff's Action | 54 |

# INDEX A



**HOW TO VERIFY THIS DOCUMENT**
Option 1. Scan it through any bar code reader or cellphone QReader Software
Option 2. Directly verify it from website http://shc.gov.pk/cfms-dc.php Document Code
C94D691A6476177282C2AE6B754B4C100

IN THE COURT OF XI CIVIL/FAMILY JUDGE & JUDICIAL MAGISTRATE, KARACHI, SOUTH.

Before: S.IMRAN IMAM ZAIDI

# Guardian & Ward Application No. 1043 /2015

1.   Mr. Ahmer Naqvi s/o Ahmed Naqvi

2.   Mrs. Azma Naqvi w/o Ahmer Naqvi both permanent resident of 303, Royal Somerset , NJ08873, USA........Applicant/ Petitioner

**V e r s u s**

1.   Public at Large.......................................................Respondents

Baby Girl Sonya..............................Minor



a.   Learned counsel for petitioner Mr. Tufail Sheikh Reg # 518/LC/Ghotki

b.   Petitioner in person Azma Naqvi is present along with minor baby girls Sonya is present.

c.   Worthy Commissioner, Mr. Abid Akram Advocate, Ex-Vice President, Karachi Bar Association is present.

ORDER

15-08-2018

By this order I intend to dispose of the instant application U/S 15 of Guardian and Ward Act, 1890 for appointment of guardian of the minors/ wards, declaration of guardian/ parental ship of minor baby girl Sonya and irrevocable release/ custody of minor baby namely Sonya filed by the applicant through his attorney for appointment, declaration of Guardian/parentage of the minor/ward named above and subsequent irrevocable release of minor to the plaintiff.

Earlier, on 16.01.2015 the guardian ship certificate was issued to the plaintiffs after observing all mandatory formalities under the law i.e By consent of the parents/Respondents, namely Sikandar Faisal Shah & Wajeeha Yasmeen through adoption deed and after publication of notice to public at large this was published in news papers also. The applicants/plaintiffs were authorized to look after the education, health and the welfare of minor & they were bound to produce the minor whenever required by the court. The guardian ship certificate was granted with permission to take the minor girl Sonya to United States of America.

Now, on 03.07.2018 the applicant/plaintiff filed an application u/o 18 Rule 18 of C.P.C 1908, Application u/s 151 & 152 C.P.C.  r/w section 15 of Guardian & Wards  Acts praying therein for

http://192.168.16.28/cfnn_dc_v26/case-order/77K716

declaration of petitioner as guardian/ parent of minor baby Sonya with declaring her as orphan under section 101(b)1F I of Immigration and Nationality Act with irrevocable release of minor to plaintiffs.

Resultantly, the application u/o 18 rule 18 of C.P.C 1908 was allowed on 16.08.2017 and a commission was appointed, comprised upon Mr. Abid Akram, Advocate of High Court, having ledger # 4352 S.B.C, Ex. Vice President of Karachi Bar Association, and was directed to furnish comprehensive report upon the matter within 3 days i.e. on 20.07.2018. He was entrusted to investigate the child's well being and confirm the claim of guardian about their honest effort to find the birth parents.

The report was furnished on 20.07.2018 which was taken on record.

1. Deed of Adoption

2. Birth Certificate bearing CRMS # B 424029-15-0269 issued by the Secretary Union Council Pak Colony, S.I.T.E Town (029) Karachi.

3. Child Registration Certificate No 7258496 dated 20.02.2015.

4. Pakistani Passport bearing # C8027110.

5. Application filed by petitioner to the SHO P.S G-11, Islamabad.

6. Photographs of minor

7. Medical expense incurred upon minor girl

8. School fees and other receipts



Note: All documents listed above were verified by the Commissioner and also originals were seen & returned to the applicants.

I reproduce the observation of worthy Commissioner as:

Quote

"I observed the substantial quality life of minor baby girl Sonya & she is enjoying all colors of life. She is living an impressive life style with excellent exposure. Moreover she is availing a safe and conducive environment. The plaintiffs had remarkably served the best interest and welfare of minor".

Un quote

Learned Commissioner also recommended that:

Quote

" I strongly recommend for declaration of parentage in the favor of plaintiff with irrevocable release applicability as the minor baby girl Sonya cannot even think of parting the plaintiff for even a fraction of seconds from plaintiffs as the conduct of plaintiffs seems like a real parents."                                                                  un quote

Learned counsel for plaintiff argued that the plaintiffs adopted the minor baby girl Sonya after observing delicate care with the help of a NGO Madad Welfare organization and said organization was alleged of selling new born babies to infertile couples and a FIR was lodged against them @ Ramna Police Station , Islamabad, Pakistan and the Investigation officer of the case also contacted with the plaintiffs who also produced the minor before him and had no objection if the biological parents appears and take back her with them. But after conducting thorough inquiry the result remained same and none appeared for raising any objection. He insisted that plaintiff are law abiding

20-Aug-18

19

NT_DESC

http://192.168.16.28/cfim_dc_v26/case-order/778710

patrons and abide all laws of land and no other claimant is yet appeared at any forum. The guardian ship certificate issued by this court is still intact as no any appeal/ revision has filed by anyone before any superior court even after the lapse of stipulated time of filing. None is aggrieved from this adoption and the conduct of plaintiffs is crystal clear and they are maintaining the minor with full spirit & zeal.

It was also observed that Wajeeha Shah & Sikander Faisal Shah were not real parents of the minor baby girl Sonya and the NGO "Madad" was involved in criminal activities but the plaintiffs/applicants Ahmer Naqvi & Azma Naqvi tried their level best to find the birth parents via police and published the notices in national news papers however as an appointed guardian they did not leave any stone for growing up the minor in best possible manner within their available resources. The applicants remained in attendance on each & every date of hearing along with the baby girl Sonya very patiently.

Now, no option had left to the court, who is the best guardian of the court to declare the minor baby girl Sonya as " orphan" or abandoned and also the declare the status of applicants , Ahmer Naqvi & Azma Naqvi as parents of minor Sonya because their untiring efforts in favor of minor baby girl and showed great responsibility which was fixed upon him by adopting the child.

It is also appreciable that despite financial & physical hardship as the lady Azma Naqvi is heart patient and surviving with a pacemaker and staying in without the companionship of her husband for 4 years in Pakistan despite of possessing U.S.A citizenship.

Learned counsel for petitioner advanced the above arguments and also urged that the petitioners/applicants are crystal clear and never deceived the judicial system however they were mis-leaded by inexperience counsels in past as they were un known about adoptions rules in Pakistan & prayed for the grant of declaration.

After hearing the arguments and perusal of record I reach to the conclusion that the plaintiffs have established their case and I do hereby issue following declarations:

## DECLARATIONS

1.   Minor baby girls Sonya is declared as "orphan" as per definition of under section 101(b)1F I of Immigration and Nationality Act due to continuous permanent disappearance of parents of minor.

2.   Plaintiff namely Ahmer Naqvi & Azma Naqvi are declared as parent/ guardian of minor baby girl Sonya.

3.   This order shall have irrevocable release of minor baby girl Sonya to the plaintiffs.

Announced in open Court.

Given under my hand & seal of this court on 15th August 2018



(S.IMRAN IMAM ZAIDI)

XIth Family Judge, South

Civil/Family Judge
Judicial Magistrate &
Karachi South

# INDEX B



U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services
Administrative Appeals Office
20 Massachusetts Ave., N.W., MS 2090
Washington, DC 20529-2090

**U.S. Citizenship
and Immigration
Services**

AHMER SYED NAQVI
303 ROYAL CT
SOMERSET NJ 08873

DATE: NOV. 16, 2018

FILE #: A096 969 141
PETITION RECEIPT #: SIM 16 046 00025
I-290B RECEIPT #: MSC 18 910 96237

IN RE:   Petitioner:   AHMER SYED NAQVI
         Beneficiary:   SONYA NAQVI

PETITION:   FORM I-600, PETITION TO CLASSIFY ORPHAN AS AN IMMEDIATE RELATIVE

ON BEHALF OF PETITIONER:

PAUL N GILBERT, ESQUIRE
LAW OFFICES OF PAUL N GILBERT
2001 RT 46 STE 310
PARSIPPANY NJ 07054

Enclosed is the non-precedent decision of the Administrative Appeals Office (AAO) for your case.  If you believe we incorrectly decided your case, you may file a motion requesting us to reconsider our decision, reopen the proceeding, or both.  The requirements for motions are located at 8 C.F.R. § 103.5.  Motions must be filed on a Form I-290B, Notice of Appeal or Motion, **within 33 days of the date of this decision.**  This time period includes three days added for service by mail.

The Form I-290B website (www.uscis.gov/i-290b) contains the latest information on fee, filing location, and other requirements.  **Please do not mail any motions directly to the AAO.**

Thank you,

*Barbara Q Velarde*

Barbara Q. Velarde
Chief, Administrative Appeals Office

 **U.S. Citizenship and Immigration Services**

**Non-Precedent Decision of the Administrative Appeals Office**

MATTER OF A-S-N-

DATE: NOV. 16, 2018

APPEAL OF NATIONAL BENEFITS CENTER DECISION

PETITION:   FORM I-600, PETITION TO CLASSIFY ORPHAN AS AN IMMEDIATE RELATIVE

The Petitioner, a U.S. citizen, received approval of his petition to classify an orphan as an immediate relative under section 101(b)(1)(F) of the Immigration and Nationality Act (the Act), 8 U.S.C. § 1101(b)(1)(F). After providing notice to the Petitioner, the Director of the National Benefits Center revoked the approval of the Form I-600, Petition to Classify Orphan as an Immediate Relative (orphan petition). On appeal, the Petitioner submits new evidence and a statement asserting the Beneficiary's eligibility. Upon *de novo* review, we will dismiss the appeal.

## I. LAW

The Petitioner is seeking to classify an orphan as an immediate relative. An orphan is defined as a child, under the age of 16 at the time a petition is filed on his or her behalf, who is an orphan because of the death or disappearance of, abandonment or desertion by, or separation or loss from, both parents, or for whom the sole or surviving parent is incapable of providing the proper care and has in writing irrevocably released the child for emigration and adoption; provided, that the Secretary of Homeland Security is satisfied that proper care will be furnished if the child is admitted to the United States. Section 101(b)(1)(F) of the Act. A petitioner bears the burden of proof to demonstrate eligibility by a preponderance of the evidence. *See Matter of Chawathe*, 25 I&N Dec. 369, 375 (AAO 2010).

USCIS may revoke the approval of an orphan petition upon notice to the petitioner for "good and sufficient cause" when the necessity for the revocation comes to the attention of USCIS. Section 205 of the Act, 8 U.S.C. § 1155; 8 C.F.R. § 205.2(a). We review appeals from revocation proceedings *de novo. Matter of Simeio Solutions, LLC*, 26 I&N Dec. 542, 542 n.1 (AAO 2015).

## II. ANALYSIS

### A. Facts and Procedural History

The Petitioner filed the orphan petition on behalf of the Beneficiary, a citizen of Pakistan, in 2015, when the Beneficiary was 15 months old. The U.S. Department of State advisory on intercountry adoptions in Pakistan states that the country does not have a central government adoption authority

*Matter of A-S-N-*

and prospective adoptive parents must petition the family court for guardianship of a specific child to complete the child's adoption in the United States.[1]

  1. Initial Documentation Filed With the Orphan Petition

With the orphan petition the Petitioner submitted an affidavit from the Beneficiary's alleged birth parents stating that they gave guardianship and custody of the Beneficiary to T-G-[2] of the Al-Madad Welfare Organization (Al-Madad). He also submitted an order from the Court of Family Judge, South, Karachi, Pakistan (family court), dated January 20, 2015, which declared that the Beneficiary's alleged birth mother appeared in court and had no objection to the appointment of the Petitioner and his spouse as the Beneficiary's guardian. The family court accordingly issued a guardianship certificate appointing the Petitioner's spouse, who was residing in Pakistan, as the Beneficiary's guardian with permission to take the Beneficiary abroad.

In September 2015, the family court issued a second guardianship order, amending the findings in the first order. In this order, the family court declared that the alleged birth parents of the Beneficiary were not the biological parents and had instead "found an abandoned baby and they signed deed of adoption by making material concealment of facts." The guardianship order further provides, in part:

> The respondents who in connivance with MADAD Welfare Agency introduced themselves real parents of the said minor baby and handed over actually an abandoned baby and the whereabouts of her actual biological parents were not known. Earlier matter was also published in daily newspaper but no one has come to claim the said baby . . . Since the respondents are not real parents of the minor custody of the said baby has already been handed over to the applicants by the then court and since then the minor is living with the applicant . . . and she is properly being looked after and all facilities are being provided to her, love and affection, welfare and the previous court after observing the legal formalities handed over the minor to the applicants who devoted their life to the min[o]r . . . now the minor is fully attached with the applicant . . . . In these circumstances the whereabouts of the real parents (biological parents) or any claimant are not known as no reasonable hope of their reappearance and there has been a reasonable efforts to locate them but whereabouts are unknown I have no hesitation being a Guardian Judge to appoint and declare the Applicants mention above as Guardians of the abandoned baby.

*Guardianship Order*, dated September 2, 2015.

---

[1] U.S. Department of State, *Pakistan Intercountry Adoption Information*, https://travel.state.gov/content/travel/en/Intercountry-Adoption/Intercountry-Adoption-Country-Information/Pakistan.html (last visited November 15, 2018, and added to record of proceedings).
[2] Names withheld to protect the individuals' identities.

2

*Matter of A-S-N-*

The family court issued a second guardianship certificate appointing both the Petitioner and his spouse as the Beneficiary's guardians with permission to take the Beneficiary to the United States. The guardianship certificate grants the Petitioner and his wife permission to, "take the abandoned baby . . . with them to USA where they reside for immigration purpose, which is under process and the applicants shall be personally responsible to maintain the abandoned baby in accordance with the laws."

### 2. Issues Raised on Revocation

The Director approved the orphan petition in 2016, and sent it pursuant to the regulatory requirements of 8 C.F.R. § 204.3(k), for an I-604, Determination on Child for Adoption, by the U.S. Consulate in Islamabad, Pakistan to verify the child's orphan status.[3] The consulate reviewed the orphan petition and noted that even though the family court discovered material misrepresentations in the first guardianship proceedings, it did not rely on a law enforcement investigation in the decision making process of the second guardianship order. The consulate further determined that the Beneficiary's alleged birth mother and the Al-Madad's president, T-G-, were both arrested in connection with child abduction and selling children. The beneficiary's alleged birth mother was a hospital worker who was involved in abducting newborns. The consulate returned the orphan petition to the Director of the National Benefits Center for revocation because the consular officer was unable to establish that the Beneficiary meets the definition of an orphan under the Act.

In a notice of intent to revoke (NOIR), the Director informed the Petitioner that the U.S. consulate strongly suspected that the Beneficiary may be one of several abducted children and was unable to establish that the Beneficiary meets the definition of an orphan. The Director requested that the Petitioner submit additional documentation establishing that: (1) the Beneficiary meets the definition of an orphan under section 101(b)(1)(F)(i) of the Act; (2) proof that the Petitioner and his spouse have secured custody of the Beneficiary in accordance with the laws of the foreign-sending country, as 8 C.F.R. § 204.3(d)(1)(iv)(B)(*I*) requires; and (3) an irrevocable release of the orphan for emigration and adoption from the person, organization, or competent authority which had previous legal custody or control over the Beneficiary if the adoption was not full and final, pursuant to 8 C.F.R. § 204.3(d)(1)(iv)(B)(*2*).

In response to the NOIR, the Petitioner resubmitted the September 2015 guardianship order and certificate, as well as new evidence, including a Karachi newspaper notice placed in March 2018 by attorney Muhammad Majid Bashir seeking the identity of the birth parents of the Beneficiary and a letter from Mr. Bashir explaining the custody and guardianship process in Pakistan. Mr. Bashir in his letter reiterated the findings in the guardianship order and noted that the criminal activities of the Al-Madad organization are well known to the public and law enforcement in Pakistan. He opined

---

[3] *See also* U.S. Department of State, *Pakistan Intercountry Adoption Information* (stating, "[p]rospective adoptive parents are reminded that consular officers are required by law to conduct a Form I-604 *Determination on Child for Adoption* (sometimes informally referred to as the 'orphan investigation') to verify the child's orphan status before an IR-3 or IR-4 immigrant visa may be issued").

3

*Matter of A-S-N-*

that "the Guardian and Wards Act, as a civil code, has no jurisdiction over criminal procedures and the judge while deciding the matter could not possibly initiate a criminal process by involving the law enforcement agencies." He further opined that the family court "gave irrevocable release of the child in her best interest, by granting the Guardianship Certificate with intent to take the child to the United States for adoption" and the guardianship certificates were "attested by the Ministry of Foreign Affairs of Pakistan, which is the only Ministry authorized as per the country's domestic law to verify such documents."

The Director reviewed the documentation submitted in response to the NOIR and determined that the Petitioner did not overcome the identified deficiencies. The Director stated that no evidence had been submitted to verify that a proper law enforcement investigation had been taken to identify the Beneficiary's true birth parents. The Director revoked the approval of the orphan petition because the Petitioner did not establish that the Beneficiary meets the orphan definition and he did not prove that guardianship had been secured in accordance with the laws of the foreign sending country.

**B.  The Petitioner Has Not Established the Beneficiary Meets the Orphan Definition**

On appeal, the Petitioner submits a statement and additional documentation, which he asserts establishes that the Beneficiary meets the definition of an orphan. The Petitioner submits a handwritten letter dated May 24, 2018, from Muhammad Akram Raza (title unknown) with a stamp from the Police Station Ramna in Islamabad, Pakistan. In the letter Mr. Raza writes that, "[d]uring the course of investigation the [Beneficiary] was taken into police custody. However, the real parents of [the Beneficiary] were not found and in the near future there is no hope of tracing her real parents. Therefore the minor girl was again handed over to [the Petitioners] as Guardian."

He also submits a third guardianship order from the family court, stating that the Petitioner filed an application seeking guardianship of the Beneficiary "declaring her as orphan under section 101(b)1F I of Immigration and Nationality Act with irrevocable release of minor to plaintiffs." The family court determined, in part, that:

> It was . . . observed that [W-S- & S-F-S-] were not real parents of the [Beneficiary] and the NGO "Madad" was involved in criminal activities but the plaintiffs/applicants [the Petitioner and his spouse] tried their level best to find the birth parents via police and published the notices in national news papers however as an appointed guardian they did not leave any stone for growing up the minor in the best possible manner within their available resources. The applicants remained in attendance on each & every date of hearing along with the [Beneficiary] very patiently.

4

*Matter of A-S-N-*

After reaching those determinations, the family declared:

> 1. [The Beneficiary] is declared as "orphan" as per definition of under section 101(b)1F I of Immigration and Nationality Act due to continuous permanent disappearance of parents of minor.
>
> 2. [The Petitioners] are declared as parent/guardian of [the Beneficiary].
>
> 3. This order shall have irrevocable release of [the Beneficiary] to the plaintiffs.

*Guardianship Order*, dated August 15, 2018.

The family court reissued its previous guardianship certificate dated September 2, 2015, with a notation that the "instant order is still intact, as no appeal was preferred against this order in any court of law by any other claimant/appellant or from masses." *Amended Guardianship Certificate*, dated May 15, 2018.

At the outset we acknowledge that the family court orders are evidence that the Petitioner and his spouse have secured custody of the Beneficiary in accordance with the laws of Pakistan, as 8 C.F.R. § 204.3(d)(1)(iv)(B)(*1*) requires. As discussed, the U.S. Department of State's intercountry adoption advisory for Pakistan states that there is no adoption application in Pakistan.[4] Instead, prospective adoptive parents must petition the family court for guardianship of a specific child and complete the child's adoption in the United States.[5] The guardianship certificate must state that guardianship is granted for purposes of immigration to and adoption in the United States.[6] The submitted family court orders—specifically, the September 2, 2015, guardianship certificate—demonstrates that the Petitioner has met this requirement.

However, the Petitioner still has not established that the Beneficiary is an orphan as that term is defined under the Act. The Petitioner marked the box on the orphan petition that the Beneficiary is an orphan because she "has no parents due to the death or disappearance of, abandonment or desertion by, or separation or loss from both parents." The terms *disappearance, abandonment, desertion, separation,* and *loss,* have distinct meanings under the orphan regulations at 8 C.F.R. § 204.3(b). The Petitioner clarifies in his appeal letter that the Beneficiary is an orphan due to the disappearance and desertion of her parents. The regulations provide the following definitions for those terms:

> *Desertion by both parents* means that the parents have willfully forsaken their child and have refused to carry out their parental rights and obligations and that, as a result,

---

[4] *Supra* footnote 1.
[5] *Id.*
[6] *Id.*

*Matter of A-S-N-*

the child has become a ward of a competent authority in accordance with the laws of the foreign-sending country.

*Disappearance of both parents* means that both parents have unaccountably or inexplicably passed out of the child's life, their whereabouts are unknown, there is no reasonable hope of their reappearance, and there has been a reasonable effort to locate them as determined by a competent authority in accordance with the laws of the foreign-sending country.

8 C.F.R. § 204.3(b).

Both definitions use the term competent authority, which is defined as, "a court or governmental agency of a foreign-sending country having jurisdiction and authority to make decisions in matters of child welfare, including adoption." *Id.* As discussed, Pakistan does not have a central government adoption authority, but family courts preside over the guardianship proceedings and are considered the competent authority.[7]

Accordingly, for the Beneficiary to be considered an orphan due to *desertion* by both parents, the Petitioner must establish that the Beneficiary has become a ward of the court in accordance with the laws of Pakistan because the Beneficiary's birth parents have willfully forsaken the Beneficiary and refused to carry out their parental rights and obligations. *See* 8 C.F.R. § 204.3(b). Here, the Petitioner has not submitted evidence that the Beneficiary was made a ward of the court in accordance with the laws of Pakistan because the Beneficiary's birth parents had willfully forsaken her. Rather, the record shows that the Beneficiary came into the custody of the Petitioner and his spouse through individuals associated with an organization involved in the abduction and sale of children. Although the family court was informed of these facts during the second guardianship hearing, *see Guardianship Order* dated September 2, 2015, and nonetheless determined that it was in the Beneficiary's best interest to continue her custodial placement with the Petitioner and his spouse, the fact remains that the Beneficiary was not made a ward of the court but rather placed into the custody of the Petitioner and his spouse through an unlawful arrangement. The record does not demonstrate that the Beneficiary was placed with the Petitioner and his spouse *after* becoming a ward of the court in Pakistan. Hence, the Petitioner has not demonstrated that the Beneficiary is an orphan due to *desertion by both parents*.

Additionally, the Petitioner has not established that the Beneficiary is an orphan due to the *disappearance of both parents*. The Petitioner submits a third guardianship order, which shows that the family court, upon viewing the investigation by the Ramna police department in Islamabad as well as a notice placed in newspapers to locate the Beneficiary's birth parents, determined that the Beneficiary's birth parents could not be located. The court further determined the Beneficiary "is declared as 'orphan' as per definition of under section 101(b)1F I of Immigration and Nationality Act due to continuous permanent disappearance of parents of minor." Although the letter from the

---

[7] *Supra* footnote 1.

*Matter of A-S-N-*

Ramna police station indicates that the local police station made an attempt to locate the Beneficiary's true birth parents, there is no discussion in any of the court documents of the criminal investigation conducted in Pakistan after the arrest of the Beneficiary's alleged birth mother for child abduction from a hospital and whether or not authorities have identified the Beneficiary as one of the abducted children. The court does not summarize or otherwise reference the outcome of the criminal investigation. Although the court referenced U.S. immigration laws and section 101(b)(1)(F) of the Act and determined the Beneficiary is an orphan "due to continuous permanent disappearance" of her parents, the family court in Pakistan does not have the authority to make an orphan determination under U.S. immigration law. The court's finding does not demonstrate that it made a determination under the laws of Pakistan that the Beneficiary's parents have unaccountably or inexplicably passed out of the child's life, their whereabouts are unknown, there is no reasonable hope of their reappearance, and there has been a reasonable effort to locate them. Consequently, the Petitioner has not demonstrated that the Beneficiary is an orphan due to the *disappearance of both parents* because the court order cites to U.S. immigration law and the record does not demonstrate that the family court's determination was made "in accordance with the laws of the foreign-sending country," Pakistan.

The Petitioner does not claim that the Beneficiary is an orphan under any other basis in the Act, as those distinct terms are defined in the orphan regulations. We note that although the family court stated in the second guardianship order that the Al-Madad organization, an unlicensed agency, gave the Beneficiary to the Petitioner and his spouse as an "abandoned baby," the record does not contain any evidence with facts to support this finding. The term *abandonment by both parents* requires the birth parents to have "willfully forsaken all parental rights, obligations, and claims to the child," and if the Beneficiary was abducted, her birth parents could not have willfully forsaken her. *Id.* Moreover, even if the birth parents willingly released the Beneficiary to Al-Madad, a relinquishment or release of the child by the parents to a third party for custodial care in anticipation of, or preparation for, adoption does not constitute abandonment, unless the third party is authorized by the foreign-sending country to act in such a capacity, which is not the case here. *Id.* Accordingly, the Petitioner has not established that the Beneficiary is an orphan under section 101(b)(1)(F)(i) of the Act.

## C. Revocation Was For "Good and Sufficient Cause"

USCIS may revoke the approval of an orphan petition for "good and sufficient cause" upon providing the Petitioner notice and giving the petitioner an opportunity to offer evidence supporting the petition and opposing the revocation grounds. Section 205 of the Act; 8 C.F.R. § 205.2(a). In the NOIR, the Director notified the Petitioner of the results of the consular investigation and requested him to submit additional documentation establishing the Beneficiary meets the definition of an orphan, proof that the Petitioner and his spouse have secured custody of the Beneficiary in accordance with the laws of the foreign-sending country, and evidence of an irrevocable release of the orphan for emigration and adoption. The Petitioner submitted additional evidence, which the Director found was insufficient to establish eligibility. The Director revoked approval of the orphan petition because the Petitioner did not demonstrate that the Beneficiary meets the orphan definition and he did not prove that guardianship had been secured in accordance with the

*Matter of A-S-N-*

laws of the foreign sending country. The Petitioner submits additional evidence on appeal, which demonstrates that guardianship was secured in accordance with the laws of Pakistan. However, the Petitioner still has not established that the Beneficiary meets the orphan definition under U.S. immigration law.

On appeal, the Petitioner explains that his wife has custody of the Beneficiary in Pakistan and he and his wife have raised the Beneficiary for four years. We recognize the sympathetic factors in this case and do not question the validity of the Beneficiary's guardianship in Pakistan. However, the Petitioner must establish for U.S. immigration purposes that the Beneficiary meets the definition of an orphan. We note that certain U.S. laws and regulations have been implemented to ensure that children in international adoptions are not being obtained for adoption through sale, exploitation, abduction, and trafficking.[8] Namely, the regulations implementing the Hague Adoption Convention and the Intercountry Adoption Act of 2000 (IAA) provide key protections for children. The Intercountry Adoption Universal Accreditation Act of 2012 (UAA) was created to extend the safeguards provided by accreditation of adoption service providers to countries, such as Pakistan, that are not a party to the Hague Adoption Convention.[9] Moreover, Pakistani law requires that an orphanage be licensed under the relevant local laws.[10] In this case, the Petitioner and his spouse have not claimed and the evidence does not show that they obtained the Beneficiary through a licensed orphanage. Instead, the record indicates that they obtained the Beneficiary through an organization that was found to be involved with the abduction and sale of children. While the record does not indicate that the Petitioner had knowledge that the organization was engaged in criminal activity, there is no evidence that the Petitioner obtained custody over the Beneficiary as an orphaned child. The Petitioner has not demonstrated that the Beneficiary was ever declared a ward of the court, as required to demonstrate *desertion by both parents*, or that the family court determined under the laws of Pakistan that there was a reasonable effort to locate both of the Beneficiary's birth parents after finding that they unaccountably or inexplicably passed out of her life, their whereabouts are unknown, and there is no reasonable hope of their reappearance, as required for *disappearance of both parents*. Consequently, the record establishes that the Director had good and sufficient cause to revoke approval of the orphan petition.

## III. CONCLUSION

We acknowledge that the Petitioner and his spouse have had custody and guardianship of the Beneficiary in Pakistan since the Beneficiary was an infant. However, the Petitioner has not established for U.S. immigration purposes that the Beneficiary is an orphan, as defined under section 101(b)(1)(F)(i) of the Act. Consequently, the Director had good and sufficient cause to revoke approval of the Petitioner's orphan classification.

---

[8] U.S. Department of State, *Universal Accreditation Act of 2012*, https://travel.state.gov/content/travel/en/Intercountry-Adoption/adopt_ref/universal-accreditation-act-of-2012-2.html#q1 (last visited November 15, 2018).
[9] *Id.*
[10] *Supra* footnote 1.

8

*Matter of A-S-N-*

**ORDER:**      The appeal is dismissed.

Cite as *Matter of A-S-N-*, ID# 1800445 (AAO Nov. 16, 2018)

9

# INDEX C



**U.S. Citizenship and Immigration Services**

**Non-Precedent Decision of the
Administrative Appeals Office**

MATTER OF A-S-N-                    DATE: MAY 21, 2019

MOTION ON ADMINISTRATIVE APPEALS OFFICE DECISION

PETITION:    FORM I-600, PETITION TO CLASSIFY ORPHAN AS AN IMMEDIATE
             RELATIVE

The Petitioner, a U.S. citizen, seeks to classify an orphan as an immediate relative under section 101(b)(1)(F) of the Immigration and Nationality Act (the Act), 8 U.S.C. § 1101(b)(1)(F). The Director of the National Benefits Center denied the Form I-600, Petition to Classify Orphan as an Immediate Relative (orphan petition), and we dismissed a subsequent appeal. The matter is now before us on a motion to reconsider.[1] Upon review, we will deny the motion to reconsider.

## I. LAW

An orphan is defined as a child, under the age of 16 at the time a petition is filed on his or her behalf, who is an orphan because of the death or disappearance of, abandonment or desertion by, or separation or loss from, both parents, or for whom the sole or surviving parent is incapable of providing the proper care and has in writing irrevocably released the child for emigration and adoption; provided, that the Secretary of Homeland Security is satisfied that proper care will be furnished if the child is admitted to the United States. Section 101(b)(1)(F)(i) of the Act. A petitioner bears the burden of proof to demonstrate eligibility by a preponderance of the evidence. *See Matter of Chawathe*, 25 I&N Dec. 369, 375 (AAO 2010).

A motion to reconsider must establish that our decision was based on an incorrect application of law or policy based on the evidence in the record of proceedings at the time of the decision. 8 C.F.R. § 103.5(a)(3).

---

[1] The Petitioner requests that if we find his orphan petition does not meet the eligibility requirements, instead of denying the motion to reconsider, he alternatively "reopen the petition and hold the matter in abeyance pending submission of additional evidence." There are no provisions authorizing us to reopen a petition to hold a matter in abeyance pending submission of additional evidence. The requirements for a motion to reopen are at 8 C.F.R. § 103.5(a)(2), and state that a motion to reopen must assert new facts, supported by documentary evidence. A motion to reopen must be filed within 30 days of the decision that the motion seeks to open, except that failure to timely file may be excused in the discretion of USCIS where it is demonstrated that the delay was reasonable and beyond the control of the petitioner. 8 C.F.R. § 103.5(a)(1)(i). We lack the authority to waive these requirements. *See United States v. Nixon*, 418 U.S. 683, 695-96 (1974) (as long as regulations remain in force, they are binding on government officials).

31

*Matter of A-S-N-*

## II. ANALYSIS

The Petitioner filed the orphan petition on behalf of the Beneficiary, a citizen of Pakistan, in 2015, when the Beneficiary was 15 months old. The Petitioner filed two guardianship orders from a family court in Pakistan with the orphan petition: the first guardianship order was issued after the Beneficiary's alleged birth parents gave custody of the Beneficiary to the Al-Madad Welfare Organization; and the second guardianship order amended the findings in the first order and declared that the alleged birth parents of the Beneficiary were not her biological parents but "the whereabouts of her actual biological parents were not known."

The Director approved the orphan petition in 2016 and sent it for a Form I-604, Determination on Child for Adoption (I-604 investigation), by the U.S. Consulate in Islamabad, Pakistan to verify the Beneficiary's eligibility for orphan classification. The consulate returned the orphan petition to the Director of the National Benefits Center recommending revocation because the consular officer was unable to establish that the Beneficiary meets the definition of an orphan under the Act. The consulate stated that the Beneficiary's alleged birth mother and the Al-Madad Welfare Organization's president were both arrested in connection with child abduction and selling children. The consulate found that the family court did not rely on a law enforcement investigation in the decision making process of the second guardianship order.

The Director issued a notice of intent to revoke (NOIR) the approval of the orphan petition based on the findings of the I-604 investigation, which the Petitioner responded to with additional evidence. The Director reviewed the evidence and determined that the Petitioner did not submit evidence to verify that a proper law enforcement investigation had been conducted to identify the Beneficiary's true birth parents. The Director revoked the approval of the orphan petition because the Petitioner did not establish that the Beneficiary meets the orphan definition and did not prove that guardianship had been secured in accordance with the laws of Pakistan.

The Petitioner filed a subsequent appeal with additional evidence. We concluded on appeal that the record established the Director had good and sufficient cause to revoke approval of the orphan petition. We considered the additional evidence the Petitioner submitted on appeal, incorporated here by reference, which included a third guardianship order stating that the Petitioner and his spouse "tried their level best to find the birth parents via police and published the notices in national news papers [*sic*]" and declaring that the Beneficiary is an "'orphan' as per definition of under section 101(b)1F I [*sic*] of Immigration and Nationality Act due to continuous permanent disappearance of parents of minor." We determined that while the Petitioner's additional evidence demonstrates that guardianship was secured in accordance with the laws of Pakistan, the Petitioner has not established that the Beneficiary meets the orphan definition under U.S. immigration law.

The Petitioner reasserts on motion that the Beneficiary is an orphan due to the disappearance of both of her parents. He contends that "[w]hile the court orders unfortunately fail to summarize the results of the criminal investigation or indicate whether the beneficiary may have been abducted as an infant, this does not render the court's factual determinations invalid." He claims that "a proper law

*Matter of A-S-N-*

enforcement investigation was undertaken to identify the beneficiary's birth parents, and . . . no one came forward to claim the child."

For a child to meet the orphan definition under the Act based on the *disappearance of both parents*, the Petitioner must establish that "both parents have unaccountably or inexplicably passed out of the child's life, their whereabouts are unknown, there is no reasonable hope of their reappearance, and there has been a reasonable effort to locate them as determined by a competent authority in accordance with the laws of the foreign-sending country." 8 C.F.R. § 204.3(b). Primary evidence of the birth parents' disappearance is a decree from a court or other competent authority which makes the child a ward of the state because of such disappearance and unconditionally divests the parents of all parental rights over the child. USCIS Policy Memorandum PM-602-0116, *Guidance on Conducting Form I-604, Determination on Child for Adoption, Orphan Determinations* 17 (June 17, 2015).

Here, the Petitioner's third guardianship order shows that the family court determined that the Beneficiary's birth parents could not be located. However, as explained in our prior decision, there is no discussion in any of the court documents of the criminal investigation conducted in Pakistan after the arrest of the Beneficiary's alleged birth mother for child abduction from a hospital and whether or not authorities have identified the Beneficiary as one of the abducted children, which is relevant to identifying her birth parents. Moreover, the family court did not make the Beneficiary a ward of the state because of her birth parents' disappearance and unconditionally divest the parents of all parental rights over the Beneficiary. *See id.* The court's finding does not demonstrate that it made a determination under the laws of Pakistan that the Beneficiary's parents have unaccountably or inexplicably passed out of the child's life, their whereabouts are unknown, there is no reasonable hope of their reappearance, and there has been a reasonable effort to locate them. *See* 8 C.F.R. § 204.3(b). Accordingly, the Petitioner has not demonstrated that the Beneficiary is an orphan due to the *disappearance of both parents*.

The Petitioner asserts that it "defies logic to conclude that the court's custody determination is lawful, while its underlying factual determination regarding the disappearance of the birth parents . . . is somehow unlawful or extra-jurisdictional." However, as discussed in the U.S. Department of State's intercountry adoption information for Pakistan, in order to adopt a child from Pakistan, prospective adoptive parents must meet the requirements of both the laws of Pakistan and U.S. immigration law. U.S. Department of State, *Pakistan Intercountry Adoption Information*.[2]   In this case, the preponderance of the evidence does not establish that the Beneficiary meets the definition of an orphan due to the *disappearance of both parents*.

The Petitioner does not assert that the Beneficiary meets any other definition of an "orphan" under the Act or that our decision was otherwise erroneous. Consequently, the Petitioner has not established that the Beneficiary is an orphan, as that term is defined under section 101(b)(1)(F)(i) of the Act.

---

[2] https://travel.state.gov/content/travel/en/Intercountry-Adoption/Intercountry-Adoption-Country-Information/Pakistan.html (last viewed May 17, 2019).

# INDEX D

I

<u>IN THE COURT OF XX-CIVIL JUDGE & J.M. KARACHI SOUTH.</u>
<u>BEFORE: HUMAIRA OTHO</u>
G & W application No. 1414 of 2019

1. **Mr. Syed Ahmer NaqviS/o Syed Ahmed Naqvi**
R/o House No.19-B,
North Circular Avenue,
DHA Phase-I,Karachi.

2. **Mrs. Azma NaqviW/o Syed Ahmer Naqvi**
R/o House No.19-B,
North Circular Avenue,
DHA Phase-I,Karachi.

Both Muslim, adults, through their Attorney
**Mr. Abdul JabbarS/o Allah Dad,**
Holding CNIC No.42201-5377507-9,
R/o House No.717-C, Block-2,
P.E.C.H.S,Tariq Road, Karachi.......................................Applicants

**VERSUS**

1. **Sikandar Faisal Shah**
S/o Karima Shah

2. **Mst. Wajeeha Yasmeen**
W/o Sikandar Faisal Shah
Both R/o House No.153-B, 13-D/2, Gulshan-e-Iqbal,
Karachi.
House No.5213, Mohallah Dabegaran, Illaq Dabgari,Peshawar.

3. **Al-Madad Welfare Organization,**
House No.1027, Street No.67, Sector 10/4-G,
Islamabad.

**Station House Officer,**
Police Station Ramma,
Islamabad.

5. **Public at Large**..........................................................Respondents.

**Baby Girl Sonya Muslim residing with Applicants**
at above mention address of Guardians....................................Minors.

<u>O R D E R</u>
<u>31.10.2019</u>

By this Order, I intend to dispose of G & W Application under
section 7 red with Section 10 of the G & W Act 1890 filed by the
applicants with prayer to declare the applicants as parents/guardian of
minor girl Sonya and grant permission to take the minor with them
abroad for lifetime, through US immigration/nationality of the said
Ward.



Scanned by CamScanner

34

2

Facts in brief as contended in the application is that the applicants are Pakistani citizen, being a law abiding citizen of Pakistan, having a good reputation in the locality and society in Pakistan and are appearing through their duly constituted Attorney. The applicants are married for over 25 years having no possibility of biological children, yet carrying hopes and dreams to raise a child/children and enjoy the joys of parenthood for which they had applied in various organizations across Pakistan for adoption of child as per their knowledge for adoption purposes. The applicants were approached by an NGO namely Al-Madad which offered the adoption of a baby child through the child's alleged parents (not in the knowledge of the Applicants/Spouses then), without any consideration only in the name of Almighty Allah. In the said adoption, a Deed of adoption was executed on 20.09.2014, between the alleged claiming ex-guardians (husband namely Sikandar Faisal Shah and wife namely Wajeeha Yasmeen W/o Sikandar Faisal Shah Respondent No.1 & 2) and the applicants as the adopting party, took the absolute irrevocable custody of minor baby girl Sonya, date of birth 01.08.2014, hereinafter referred to as the minor/ward/orphan/beneficiary, without any consideration as per the terms and conditions of the Deed of adoption dated 20.09.2014. Further stated that the applicants filed Guardian & Wards applicationNo.1590/2014, before the Court of Family Judge, South Karachi, for adoption of an orphan baby girl (orphan status unknown at that time to applicants) namely Sonya (minor) and the concerned court vide Order dated 20.01.2015, after recording statement of the claiming ex-guardian/parent of no objection of grant of guardianship certificate of minor in favor of applicants, thereafter, appointed the applicants as guardian of the Ward/Sonya with permission to take the Ward abroad and also allowed for the passport to be made for immigration purpose of the said Ward. The applicants after completing all the legal formalities, succeeded to acquire the passport of the ward as per the order of the Honourable Court and thereafter the applicants applied for the immigration of the ward/minor Sonya for USA (where the applicants hold nationality). The said immigration process of the ward Sonya was declined by the United States Citizenship and Immigration Service "USCIS", where it came to the knowledge of the applicants that the claiming ex-guardians of ward Sonya (Respondent No.1 & 2) were in fact not the biological parents of the ward Sonya, whereas they had given the abandoned baby/Ward and they signed the Deed of adoption by material concealment of facts in connivance with AL-MADAD WELFARE ORGANIZATION (Respondent No.3). Once the applicants came to know about the material concealment of facts by the claiming ex-guardian(s). The applicants approached the Hon'ble Court again and filed a new Guardian & Ward Application No.1042/2015, before the Court of Family Judge, South Karachi, for declaring baby Sonya as an "orphan baby girl" (minor) born on 01.08.2014, in Pakistan being a child whose both parents have unaccountably or inexplicably passed out of the minor's life, their whereabouts are unknown, there is no reasonable hope of their reappearance, and there has been a reasonable effort to locate them as determined by a competent authority in accordance with the laws of Pakistan and also "to declare that the whereabouts of the biological parents of the said minor baby are not known and declaring applicants to be fit and proper to act as guardians of the person of the said baby/ward and also granting them permission to take the minor baby Sonya with them to USA where they permanently reside on completion of

35

3

the necessary codal formalities. The aforementioned Court again issued all modes of service and even statement of bailiff was recorded who affirmed that whereabouts of the claiming ex-guardians were untraceable but no one approached the Hon'ble Family Court to claim the abandoned baby including. AL-MADAD Welfare Organization (Adoption Agency), as well as the claiming ex-guardian being resident of House No.153-B, 13-D-2, Gulshan-e-Iqbal, Karachi, and House No.5213, Muhallah Dabegaran, Illaqa Dabgari, Peshawar. They have further stated that thereafter in the aforementioned circumstances the Guardian & Wards Application No.1043/2015 before the Court of Family Judge, South Karachi, was decided without any hesitation and appointed and declared the applicants as "Guardians of the orphan baby/ward/Sonya" keeping in mind the welfare parameters being observed by the applicants, allowing them to take the minor/ward Sonya to USA whom they have adopted and issued Guardianship Certificate accordingly to the applicants vide Order dated 02.09.2015. During this time period the petitioner discovered the medical incapacity of the minor ward Sonya having cardiac problem and having cleft palate (an opening or split in the roof of the month), which the petitioner got treated on necessity basis, which only further extends the applicant(s) love and affection towards the ward Sonya. The aforementioned treatment took place in Agha Khan Hospital, Karachi at the cost and expenses of the applicants, further establishing their bonafides. The applicants have again filed a case for immigration to USA but they/applicants received a notice of intent to revoke (NOIR) dated 14.03.2018 from the Director of the National Benefits Center (working within USCIS), stating that the Director approved the orphan petition in 2016, and sent it further for regulatory requirements for determination of child adoption by the US consulate in Islamabad, Pakistan to verify the child's orphan status. The US consulate further determined that the Ward's alleged birth mother and AL-MADAD's President, were both arrested in connection with child abduction and selling children. The beneficiary's alleged birth mother was a hospital worker who was involved in abducting new born(s). The US consulate at Islamabad returned the orphan petition to the Director of National Benefits Center for revocation because the consular office was unable to establish the definition of an orphan under the US law. Furthermore, the US consulate at Islamabad strongly suspected that the ward may be one of several abducted children and was unable to establish that the ward meets the definition of orphan. Also some new babies were recovered by "Ramna Police station" (Respondent no. 4) at Islamabad under FIR No. 51/2015, which was confirmed by the police authorities and law enforcement agencies about these illegalities, abduction and selling children, to combat that children in adoptions/international adoptions are not being obtained through sale, exploitation, abduction and trafficking to the US consulate at Islamabad. In this regards, regulations implementing the Huage Adoption Convention and the intercountry Adoption Act of 2000 (IAA) provide key protection for children. The Intercountry Adoption Accreditation Act 2012 (UAA) was created to extend the safeguards provided by accreditation of adoption service providers to countries, such as Pakistan amongst others. They have also stated that with regards to the FIR No.51/2015 Police station "Ramna" in Islamabad, the letter from the police station was provided to the applicant No.1, wherein Mr. Muhammad Akram Raza wrote that during the course of investigation the ward Sonya was taken into police custody. However, the real/biological parents of the ward were not



4

found/not known and in the near future there is no hope of tracing her real parents. Therefore, the minor girl was again handed over to the applicants as Guardian. The said ward baby Sonya neither recovered as "theft baby" nor claimed by any one during the investigation conducted by respondent No.4. The applicants were unable to demonstrate that could verify that a proper law enforcement investigation had been taken to identify the ward's true birth parents. Therefore, the Director of the National Benefits Center (working within USCIS) revoked the approval of the orphan petition case because the applicants did not establish that the ward meets the orphan definition and he did not prove the guardianship had been secured in accordance with the laws of the foreign sending country/Pakistan. They have further stated that it is well established that AL-MADAD Welfare Organization and the alleged claiming ex-guardians were not the real parents or adoption Agency of the ward Sonya and were involved in criminal activities but the applicants tried their level best, with bona fide, to find the birth parents via police, published the notices in national newspapers of Pakistan, however as an appointed guardian they did not leave any stone for growing up the minor in the best possible manner within their available resources. The applicants remained in attendance on each and every date of hearing along with the ward very patiently which the Honourable Court have also appreciated. The applicants have filed application under Order 18 Rule 18 of CPC 1980, which was allowed on 16.08.2017, application under section 151 & 152 CPC r/w section 15 of Guardian & Ward Act 1890, which was allowed on 15.08.2018 with declaration reproduce as under :-

DECLARATION

1. Minor baby Sonay is declared as "orphan" as per section 101(b)(1)F (i) of Immigration and Nationality Act due to continuous permanent disappearance of parents of minor.

2. Plaintiff namely Ahmer Naqvi & Azma Naqvi are declared as parent/guardian of minor baby girl Sonya.

This Order shall have irrevocable release of minor baby girl Sonya to the plaintiffs.

In the light of the aforementioned the Director of the National Benefits Center (working within USCIS) reviewed the documentation submitted in response to the notice of intent to revoke (NOIR) and determined that the applicants did not overcome the identified deficiencies in the orphan petition case, as further demanded by the aforementioned Director, therefore the appeal was dismissed by the Director of the National Benefits Center (working within USCIS), on the grounds including that no evidence had been submitted to verify that a proper law enforcement investigation had been taken to identify the Beneficiary's (baby Sonya) true parents. Again in light of the aforementioned, the applicants filed an application U/S 114 of CPC r/w Section 21 of the General Clauses Act, in Guardians and Ward application No.1043/2015 wherein it was prayed that order dated 15.08.2018 be reviewed/modified by inserting the detail of finding i.e. from investigation to publication efforts to trace the actual parents as well Court process to inform the public at large (including unknown parents whosoever they may be), detail define desertion & disappearance

37

5

for orphan. required by the Home Department, etc. Hon'ble Court of Family/Guardian Judge. XIth, at Karachi, South, dismissed the aforementioned review application on 20.07.2019, finding no room to review the said order. The applicants are lawfully entitled to seek protection from this Hon'ble Court of their valuable established rights over the ward and this is fit case in which this Hon'ble Court may interfere and order/decree accordingly to meet the ends of justice. The applicants in order to redress their grievances have approached time and again. showing due diligence, being vigilant, to the hierarchy of the Courts and all concerned departments as stated above in the body of this application, but no fruitful result came out as the applicants adopted "orphan" child was denied U.S. immigration for lack of clarity by the respondents No.4 thereby not enabling the previous Honourable Court to provide proper and just reasoning. No other adequate remedy is available to the applicant except for seeking declarations from this Hon'ble Court by inserting/meeting/taking into an account the report from the "Ramna" police station at Islamabad in FIR No.51/2015 which has conducted through enquiry/investigation as a competent authority in accordance with the law with regard to the ward Sonya having the birth/biological parent(s) unaccountably or inexplicably passed out of the ward's life their whereabouts are unknown, there is no reasonable hope of their reappearance, and there has been a reasonable effort to locate the. which is detrimental to the interests/rights of the applicants, except by filing this G & W Application in this Hon'ble Court. The custody of the said baby has already been handed over to the applicants by this Hon'ble Court and since then the minor is living with the applicants and she is properly being looked after and all facilities are being provided to her. love and affection. welfare and the previous courts after observing the legal formalities hand over the minor baby to the applicants who devoted their life to the minor Sonya and now the minor is fully attached with the applicants. Hence applicants filed this G & W Application with following prayers.

## PRAYERS.

a) To declare that the minor baby Sonya is "orphan" as per section 101(b)(1)F (i) of Immigration and Nationality Act due to continuous permanent disappearance of parents of minor.

b) Further applicants namely Ahmer Naqvi & Azma Naqvi are declared as parent/guardian of minor baby girl Sonya being fit and proper persons.

c) Further this order shall have irrevocable release of minor baby girl Sonya to the applicants.

d) To grant the applicants permission to take the minor orphan baby Sonya with them abroad for lifetime, through US immigration/nationality of the said ward.

e) Further declare that the respondent No.4, S.H.O. Police Station "Ramna" Islamabad in FIR No.51/2015 has conducted thorough enquiry/investigation as a competent authority in accordance with law with regards to the ward Sonya's birth/biological parent(s) unaccountably or inexplicably disappeared.

Scanned by CamScanner

38

Scanned by CamScanner

6

f) *Call report from the S.H.O. "Ramna" Police Station at Islamabad in FIR No.51/2015 which has conducted through enquiry/investigation as a competent authority in accordance with the law with regards to the ward Sonya to declare the birth/biological parent(s) unaccountably or inexplicably passed out of the ward's life, their whereabouts are unknown, there is no reasonable hope of their reappearance.*

g) *To declare that this Court became custodian/guardian after knowing the fact that the birth/biological parent(s) unaccountablyor inexplicably passed out of the ward's life, their whereabouts are unknown, there is no reasonable hope of their reappearance, and there has been a reasonable effort to locate them.*

*Any other efficacious and equitable relief (s) as this Honourable Court may deem fit and proper under the circumstances of this Constitutional Petition.*

After filing the present Application, notices/summons were published in Newspaper with the photograph of minor in "The News" International dated 04.09.2019 and notices were also issued to the Respondents through ordinary modes and substitute modes but no one from the Respondents No. 1 to 3 and public at large appeared before this Court nor filed any objections from any corner. However, Respondent No. 4submit its detailed report on dated 03.10.2019 before this Court. Having failed to file objections, respondent No. 1 to 3 and 5 was debarred from filing the same and matter was kept for appearance of parties. Applicant No. 1 & 2 appeared through attorney and recorded statement and reiterated the contents of the application at Ex. A/1. He prayed for issuance of guardianship certificate in favor of Applicants and produced witnesses namely Nasreen Akhtar and Ali Muhammad Azmat who supported the version of applicants.

Heard learned counsel for the Applicant and perused material placed on record.

It is a matter of record that prior to this application, applicants were granted guardianship certificate with permission to take the minor baby Sonya to USA. Further applicants were also declared as parent/guardian of the minor baby Sonya and also declared irrevocable release of minor baby girl Sonya to the applicants vide order dated 15.08.2018.

Furthermore, Respondent No. 4 (i-e Station house officer police station Ramna), submitted their report along with the copy of the FIR of the case to this court. Perusal of the report from the "Ramna" police station at Islamabad in FIR No.51/2015 shows that police conducted thorough enquiry/investigation with regard to the birth/biological parents of the ward Sonya and stated that the birth/biological parent(s) of the minor baby Sonya could not find and there is no reasonable hope of their reappearance. Further that the accused nominated in FIR No. 51/2015 was acquitted by the concern court and no any report of kidnapping and abducting of minor baby Sonya came on record.

7

In the light of police report of "Ramna" police station, Islamabad, it is concluded and declared that the minor baby Sonya is an orphan and abandoned child due to continuous disappearance of the real biological parents, unaccountably or inexplicably passed out of the minor's life and their whereabouts are unknown, further there is no reasonable hope of their reappearance. Since the minor is under the care and custody of the Applicants, they are taking care of minor and all the responsibilities of the minor is afforded by Applicants. The Applicants are looking after for the health, food, clothing and general welfare of the minor. No adverse interest of the Applicant has come on record to the interest of the minor and the welfare of the minor lies with the Applicants.

Therefore, the Applicants appointed as guardian of person of the minor as it will be in the interest and welfare of the minor to appoint anyone as guardian of his person as the minor cannot be left abandon.

Keeping in view the above facts and discussion, this application is hereby allowed, the Applicants are hereby appointed as guardian of the person of the minor namely Baby Sonya under section 7 of the G & W Act, 1890 and the Applicant is allowed to take the minor to U.S.A for immigration purpose/adoption according to the law. Let such guardianship certificate be prepared accordingly.

**ANNOUNCED IN OPEN COURT.**

Given under my hand and seal of the Court on this 31th day of October, 2019.

Sd/ 31/10/19

(HUMAIRA OTHO)
XX CIVIL JUDGE & J. M, KARACHI SOUTH.

Date of Application.....................
Fees Estimated on.....................
Fees Deposited on.....................
Copy Ready on.....................
Stamp Supplied on.....................
Copy Certified on.....................
Copy Delivered on.....................
Copying Charges Rs.....................
Compare Charges Rs. .....................
Paper Charges Rs.....................

CERTIFIED TO BE TRUE

41

# INDEX E



U.S. Department of Homeland Security
PO Box 25920
Overland Park, KS 66225

**U.S. Citizenship and Immigration Services**

January 29, 2019

Ahmer Syed Naqvi
303 Royal Ct.
Somerset, NJ 08873

RE: SIM1604600025

File: MSC2090401597
A#: A96969141
Form: I-290B

## Motion to Reopen

On November 12, 2015, you filed Form Form I-600 Stand Alone, Petition to Classify Orphan as an Immediate Relative, pursuant to Title 8 of the Code of Federal Regulations (CFR) §204.3.

On July 18, 2016, USCIS approved the Form I-600.

On January 19, 2018, USCIS received the Form I-600 back from the Embassy of the United States of America, Islamabad, Pakistan, with the recommendation for revocation.

On March 14, 2018, a Notion of Intent to Revoke (NOIR) was issued giving you an opportunity to submit evidence in support of the Form I-600 petition and in opposition to the grounds alleged for revocation in the letter.

On April 12, 2018, you submitted your response to the NOIR; however, the submission did not overcome the inconsistencies and fraud indicators related to this Form I-600.

On April 23, 2018, the approval for this Form I-600 was revoked.

On May 11, 2018, you filed an Appeal to the Administrative Appeals Office (AAO) on Form I-290B, Notice of Appeal or Motion, pursuant to Title 8 CFR §103.5(a)(1)(i).

On June 12, 2018, your Forms I-290B and I-600 were forwarded to the AAO for review.

On November 16, 2018, the revocation of the approval of this Form I-600 was upheld by the AAO and your appeal was dismissed.

On December 19, 2018, you filed a Motion to Reconsider with the AAO.

On May 21, 2019, the AAO denied the motion. The petitioner failed to establish that the beneficiary meets the definition of an orphan, as defined in 101(b)(1)(F)(i) of the Immigration and Nationality Act (INA).

On December 2, 2019, you filed a Motion to Reopen on Form I-290B, Notice of Appeal or Motion, (with USCIS/National Benefits Center) pursuant to Title 8 CFR §103.5(a)(1)(i), which states in pertinent part:

> Any Motion to Reopen a proceeding before the Service filed by an applicant or petitioner, must be filed within 30 days of the decision that the motion seeks to reopen, except that failure to file before this period expires, may be excused in the discretion of the Service where it is demonstrated that the delay was reasonable and was beyond the control of the applicant or petitioner.

Title 8, C.F.R., §103.5A states in pertinent part:

> (b) Effect of service by mail. Whenever a person has the right or is required to do some act within a prescribed period after the service of a notice upon him and the notice is served by mail, 3 days shall be added to the prescribed period. Service by mail is complete upon mailing.

Your Motion to Reopen  was not submitted within the required 33 (thirty-three) days.

It is hereby ordered that the Motion to Reopen be dismissed as untimely filed. The decision to deny the Form I-600 is affirmed.

However, this decision is without prejudice to future applications filed with the appropriate USCIS office.

This denial may be appealed to the Administrative Appeals Office (AAO) pursuant to 8 CFR 103.3(a)(1)(iii). If you wish to appeal this decision, you must file a Form I-290B with the appropriate fee within 33 days of the date of this notice.

If you wish to file a motion to reopen or a motion to reconsider this decision, you must file a Form I-290B with the appropriate fee within 33 days of the date of this notice. The requirements for a motion to reopen and a motion to reconsider can be found in 8 CFR 103.5(a)(2) and 8 CFR 103.5(a)(5).

Form I-290B and the form instructions can be found on the USCIS website: www.uscis.gov.

Sincerely,

*Relmc*

Robert M. Cowan
Director

Officer : OA-0379

cc:  Aleksandra N. Gontaryuk, Attorney at Law

Aleksandra N. Gontaryuk
711 Jersey Avenue Suite 202
New Brunswick, NJ 08901

INDEX F

Department of Homeland Security
U.S. Citizenship and Immigration Services

**Form I-797C, Notice of Action**

| THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT. |
|---|

| NOTICE TYPE | | NOTICE DATE |
|---|---|---|
| Receipt | | February 14, 2020 |
| CASE TYPE | | USCIS ALIEN NUMBER |
| I-290B, Notice of Appeal or Motion | | A096969141 |
| RECEIPT NUMBER | RECEIVED DATE | PAGE |
| AAO2090000872 | February 10, 2020 | 1 of 1 |
| | | DATE OF BIRTH |

| | PAYMENT INFORMATION: | |
|---|---|---|
| AHMER S. NAQVI | Application/Petition Fee: | $675.00 |
| C/O ALEKSANDRA N. GONTARYUK AG LAW FIRM | Biometrics Fee: | $0.00 |
| 711 JERSEY AVENUE STE. SUITE 202 | Total Amount Received: | $675.00 |
| NEW BRUNSWICK, NJ  08901 | Total Balance Due: | $0.00 |

ǁ�devices barcode ᴵᴵᴵᴵᴵ

NAME AND MAILING ADDRESS

The above case has been received by our office and is in process.

Please verify your personal information listed above and immediately notify the USCIS Contact Center if there are any changes.

Please note that if a priority date is printed on this notice, the priority does not reflect earlier retained priority dates.

If you have questions, please visit the USCIS Contact Center at www.uscis.gov/contactcenter to connect with a live USCIS representative in English or Spanish.

If you have any questions or comments regarding this notice or the status of your case, please contact the USCIS Contact Center.

You will be notified separately about any other case you may have filed.

| USCIS Office Address: | USCIS Contact Center Number: |
|---|---|
| USCIS/Administrative Appeals Office (AAO) | (800)375-5283 |
| MS2090 | ATTORNEY COPY |
| 20 Massachusetts Ave, NW | |
| Washington, DC 20529-2090 |  |

45

If this is an interview or biometrics appointment notice, please see the back of this notice for important information.   Form I-797C  04/01/19

If you are visiting a field office and need directions, including public transportation directions, please see **www.uscis.gov/fieldoffices** for more information.

---

## Notice for People with Disabilities

---

To request a disability accommodation:

- Go to uscis.gov/accommodations to make your request online, or
- Call the USCIS Contact Center at 800-375-5283 (TTY 800-767-1833) for help in English or Spanish. Asylum and NACARA 203 applicants must call to make their request.

If you need a sign language interpreter, make your request as soon as you receive your appointment notice. The more advance notice we have of your accommodation request, the better prepared we can be and less likely we will need to reschedule your appointment. For more information about accommodations, visit uscis.gov/accommodationsinfo.

INDEX G

**U.S. Department of Homeland Security**
U.S. Citizenship and Immigration Services
*Administrative Appeals Office*
Washington, DC 20529



U.S. Citizenship
and Immigration
Services

AHMER SYED NAQVI
303 ROYAL CT
SOMERSET NJ  08873


DATE: DEC. 18, 2020              FILE #:  A096 969 141
                                 I-290B RECEIPT #:  AAO 20 900 00872

IN RE:      Petitioner:      AHMER SYED NAQVI
            Beneficiary:     SONYA NAQVI

ON BEHALF OF PETITIONER:

ALEKSANDRA N. GONTARYUK, ESQUIRE
AG LAW FIRM
711 NEW JERSEY AVE STE 202
NEW BRUNSWICK NJ  08901

Enclosed is the non-precedent decision of the Administrative Appeals Office (AAO) for your case.

If you believe we incorrectly decided your case, you may file a motion requesting us to reconsider our decision, reopen the proceeding, or both.  The requirements for motions are located at 8 C.F.R. § 103.5.  Motions must be filed on a Form I-290B, Notice of Appeal or Motion, **within 33 days of the date of this decision**.  This time period includes three days added for service by mail.

The Form I-290B website (www.uscis.gov/i-290b) contains the latest information on fee, filing location, and other requirements.  **Please do not mail any motions directly to the AAO**.

Sincerely,

Susan Dibbins
Chief, Administrative Appeals Office (Acting)

REV 5/2020                                        www.uscis.gov

47


**U.S. Citizenship
and Immigration
Services**

**Non-Precedent Decision of the
Administrative Appeals Office**

In Re: 10345264

Date: DEC. 18, 2020

Motion on Administrative Appeals Office Decision

Form I-600, Petition to Classify Orphan as an Immediate Relative

The Petitioner, a U.S. citizen, seeks to classify an orphan as an immediate relative. *See* Immigration and Nationality Act (the Act) section 101(b)(1)(F)(i), 8 U.S.C. § 1101(b)(1)(F)(i). An orphan from a country that is not a party to the Hague Convention on Protection of Children and Co-operation in Respect of Intercountry Adoption, who is under the age of 16 at the time of filing and adopted abroad by an eligible U.S. citizen, or coming to the United States for such an adoption, may be classified as an immediate relative. The Director of the National Benefits Center revoked the petition, concluding that the Petitioner did not demonstrate the Beneficiary meets the orphan definition in the Act, that the prospective adoptive parents or a person or entity on their behalf have secured custody of the orphan in accordance with the laws of that country, and that an irrevocable release of the orphan for emigration and adoption abroad was submitted. We dismissed the Petitioner's appeal of that decision and subsequent motion to reconsider. The matter is now before us on a motion to reopen.

In these proceedings, it is the Petitioner's burden to establish eligibility for the requested benefit. Section 291 of the Act, 8 U.S.C. § 1361; *Matter of Otiende*, 26 I&N Dec. 127, 128 (BIA 2013). Upon review, we will dismiss the motion to reopen.

## I. LAW

A motion to reopen must state new facts to be proved and be supported by affidavits or other evidence. 8 C.F.R. § 103.5(a)(2).

An orphan is defined as a child, under the age of 16 at the time a petition is filed on his or her behalf, who is an orphan because of the death or disappearance of, abandonment or desertion by, or separation or loss from, both parents, or for whom the sole or surviving parent is incapable of providing the proper care and has in writing irrevocably released the child for emigration and adoption; who has been adopted abroad by a United States citizen, or who is coming to the United States for adoption by a United States citizen; provided, that the Secretary of Homeland Security is satisfied that proper care will be furnished if the child is admitted to the United States. Section 101(b)(1)(F) of the Act.

The term *disappearance of both parents* means that both parents have unaccountably or inexplicably passed out of the child's life, their whereabouts are unknown, there is not reasonable hope of their

reappearance, and there has been a reasonable effort to locate them as determined by a competent authority in accordance with the laws of the foreign-sending country. 8 C.F.R. § 204.3(b).

## II. ANALYSIS

### A. Relevant Factual and Procedural History

The Petitioner filed a Form I-600, Petition to Classify Orphan as an Immediate Relative (orphan petition), on behalf of the Beneficiary, a citizen of Pakistan, when the Beneficiary was one year old. Upon filing with the Director, the record contained two guardianship orders from the XI Civil and Family Judge, Karachi South, issued in January 2015 and September 2015. The first guardianship order indicated W-Y-[1] and S-F-S- were the biological parents of the Beneficiary, and the Beneficiary was abandoned by them to the care of Al-Madad Welfare Organization (Al-Madad), an orphanage. The second guardianship order indicated W-Y- and S-F-S- were not actually the biological parents of the Beneficiary and they, in addition to Al-Madad, materially concealed facts in obtaining the first guardianship order. The court declared the Beneficiary an abandoned child whose biological parents' whereabouts were unknown after reasonable efforts to locate them. The court granted guardianship of the Beneficiary to the Petitioner and his spouse, and the Petitioner and his spouse were granted allowance to take the Beneficiary to the United States for immigration purposes.

The Director revoked the previously-approved petition after the U.S. consulate in Islamabad, Pakistan found that the Beneficiary's alleged birth mother and Al-Madad's president were both arrested for the abduction and sale of children. The U.S. consulate noted that the basis of W-Y- and Al-Madad's arrests created a concern that the Beneficiary may also be an abducted child. The Director concluded that the Petitioner did not demonstrate that the Beneficiary meets the orphan definition in the Act, that the prospective adoptive parents or a person or entity on their behalf have secured custody of the orphan in accordance with the laws of that country, and that an irrevocable release of the orphan for emigration and adoption abroad was submitted.

The Petitioner appealed the Director's denial to us. On appeal, the Petitioner submitted his request to the police department to locate the biological parents of the Beneficiary. The Petitioner submitted the police department's letter stating that an investigation was conducted and the Beneficiary was taken into police custody, but her biological parents were not found and "in the near future there is no hope of tracing her real parents." The Petitioner also submitted a third guardianship order issued in August 2018 declaring the Petitioner and his spouse guardians of the Beneficiary, with irrevocable release for them to take her to the United States. The court specified that publication of notice of the guardianship took place and the Beneficiary was produced before the police department, who conducted thorough inquiry. The court observed that though W-Y-, S-F-S-, and Al-Madad engaged in criminal behavior, the Petitioner and his spouse tried to find the Beneficiary's birth parents through the police and the publishing of notices. We dismissed the Petitioner's appeal of that decision, finding the Director had good and sufficient cause to revoke the orphan petition. We determined that the Petitioner had demonstrated the Petitioner and his spouse had secured custody of the Beneficiary in accordance with the laws of Pakistan and that guardianship was granted for purposes of immigration to and adoption in the United States. However, we found that the Beneficiary did not meet the orphan definition under

---

[1] Initials are used to protect the privacy of this individual.

the Act, in part, because if the Beneficiary had been abducted, her birth parents could not have willfully forsaken her. In addition, we determined that if the Beneficiary had been willingly released by her parents, a "relinquishment or release of the child by the parents to a third party for custodial care in anticipation of, or preparation for, adoption does not constitute abandonment, unless the third party is authorized by the foreign-sending country to act in such a capacity, which is not the case here."

The Petitioner filed a motion to reconsider our appeal dismissal claiming that the Beneficiary is an orphan due to the disappearance of both of her parents. We denied the Petitioner's motion, concluding that the Petitioner had not demonstrated that the Beneficiary is an orphan due to the disappearance of both parents because: 1) there was no discussion in the court documents of the ongoing criminal investigation, 2) the family court did not make the Beneficiary a ward of the state because of her parents' disappearance and unconditionally divest the parents of all parental rights over the Beneficiary,[2] and 3) the court did not make a determination that the Beneficiary's parents have unaccountably or inexplicably passed out of the child's life, their whereabouts are unknown, there is no reasonable hope of their reappearance, and there has been a reasonable effort to locate them as required under the regulations.

On the motion to reopen before us, the Petitioner submits a fourth guardianship order from the court, issued in October 2019, and additional documentation.

B. Claimed Disappearance of Both Parents

We previously determined the Petitioner had not demonstrated that the Beneficiary is an orphan, as defined under the Act, due to disappearance of both her parents. We noted that USCIS policy finds primary evidence of the birth parents' disappearance to include a decree from a court or some other competent authority which makes the child a ward of the state because of such disappearance and unconditionally divests the parents of all parental rights over the child. We determined that the court did not make the Beneficiary a ward of the state because of her parents' disappearance and did not unconditionally divest her parents of all parental rights over the Beneficiary. We also determined that the court did not make a determination that the Beneficiary's parents have unaccountably or inexplicably passed out of the Beneficiary's life, that their whereabouts are unknown, there is no reasonable hope of their reappearance, and that there has been a reasonable effort to locate them. And, we indicated that there was no discussion in court documentation of the criminal investigation conducted in Pakistan concerning W-Y-'s arrest, and whether the Beneficiary was identified as a victim of abduction.

The fourth guardianship order submitted on instant motion acknowledges that the U.S. consulate found that the Beneficiary's alleged birth mother and Al-Madad's president were arrested in connection with child abduction and sale. And, that the U.S. consulate suspected the Beneficiary was one of the abducted children. The court indicated that police and law enforcement agencies recovered some of the abducted children and the Beneficiary was taken into police custody during the course of investigation. The court references a letter from the police station "FIR No.51/201," in stating that though the Beneficiary was taken into police custody, her true biological parents were "not found/not

---

[2] USCIS Policy Memorandum PM-602-0116, *Guidance on Conducting Form I-604, Determination on Child for Adoption, Orphan Determinations*, 17 (June 17, 2015).

3

known." The court determined that the police department "conducted thorough inquiry/investigation as a competent authority in accordance with law with regards to the [Beneficiary's] birth/biological parent(s) unaccountable or inexplicably disappeared." And, the court indicated that notices were also published with the Beneficiary's photograph in national newspapers, but there was "no hope of tracing her real parents." The Petitioner previously submitted evidence of publication notices concerning the Beneficiary as posted in newspapers; on motion, the Petitioner submits evidence of an additional 2019 newspaper court publication notice containing the Beneficiary's photograph. The notice from the court states that the Petitioners applied for guardianship of the Beneficiary and directed any individual who could show cause for the dismissal of the guardianship application to appear before the court. The court declares that it became "custodian/guardian" of the Beneficiary "after knowing the fact that the birth/biological parent(s) unaccountably or inexplicably passed out of the ward's life, their whereabouts are unknown, there is no reasonable hope of their reappearance, and there has been a reasonable effort to locate them."

In its fourth guardianship order, the court indicated that "the accused nominated in FIR no. 51/2015" were acquitted by the court with no reports that either kidnapping or abduction of the Beneficiary had taken place. The Petitioner submits on motion a police department report to the court indicating that the police attempted to find the Beneficiary's parents in "every way possible but they were not found and neither does it seem like they will be found in the near future . . . [and] are missing." The police report further indicates that the accused were released by the court "on account of there not being enough evidence," and "no report for a missing or kidnapped baby girl [with Beneficiary's name] has been found." The Petitioner also submits on motion a June 2019 order from a judicial magistrate, West Islamabad, indicating that the matter had been pending before the court from December 2015 and "despite taking coercive measure and issuance of show cause notices to the prosecution the prosecution has failed to produce even a single witness against the accused/persons." As the prosecution failed to produce evidence against the accused, the judicial magistrate ordered the accused "acquitted from the charges on this case."

On motion, the Petitioner incorrectly asserts that with this newly submitted evidence, the record demonstrates that the Beneficiary meets the definition of an orphan by a preponderance of the evidence. The court's fourth guardianship order discusses the results of the criminal matter concerning the Beneficiary's alleged birth parents, demonstrates the accused were acquitted under the law, and found there was no evidence the Beneficiary was a victim of abduction. In addition, the fourth guardianship order finds that the Beneficiary's parents have unaccountably or inexplicably passed out of the Beneficiary's life, that their whereabouts are unknown, there is no reasonable hope of their reappearance, and that there has been a reasonable effort to locate them. As a result, the court indicates that it became a custodian/guardian for the Beneficiary due to the disappearance of her parents. However, the court does not unconditionally divest the Beneficiary's parents of all parental rights over her. As stated, USCIS policy finds primary evidence of the birth parents' disappearance to include a decree from a court or some other competent authority 1) which makes the child a ward of the state because of such disappearance, and 2) unconditionally divests the parents of all parental rights over the child. Accordingly, the Petitioner has not demonstrated that the Beneficiary meets the orphan definition due to disappearance of her parents by a preponderance of the evidence.

## III.  CONCLUSION

The Petitioner has not overcome our previous finding, and has not demonstrated that the Beneficiary meets the orphan definition due to disappearance of her parents.

**ORDER:**       The motion to reopen is dismissed.

INDEX H



# CHISHTI LAW ASSOCIATES

Corporate Legal Consultant | Advocates High Courts

Dated 01-03-2021

Dear Ms. Alexsandra Gontaryuk,

This is to inform you that, we have filed an application under section 151 of CPC, and requested the Hon'able Court to clarify that the "Irrevocable release" means that the natural parents of the child are hereby explicitly and unconditionally divested of all parental rights over the child. The Hon'able Court has clarified that "obviously such irrevocable release was entrusted or awarded, when the natural parents of the child explicitly and unconditionally divested of all parental rights over the child".

In this order the natural parents means the actual natural parents/biological parents/real parents/Birth parents, or anyone claiming to be the parent of baby Sonya.

Yours Sincerely

Azmat Tufail
(Advocate High Court)
Chishti Law Associates

Office No. 207, 2nd Floor, Hamilton Courts, G/1, Near Teen Talwar, Block-7, Clifton Karachi-75600
Phone: 021-35306108-9  Email: clalawassociates@gmail.com  www.clalaw.com.pk

53

Scanned with CamScanner

# INDEX I

**IN THE COURT OF XX CIVIL JUDGE & J.M, KARACHI SOUTH**
**[BEFORE: HUMAIRA OTHO]**
Guardian & Wards Case No. 1414 of 2019.

Syed Ahmer Naqvi & others..........................................Applicant
**VERSUS**
Sikander Faisal Shah & others............................Respondents.

**ORDER SHEET**
**10.02.2021**

By way of this order I shall dispose of the application for review of order dated 28.01.2021 filed by the counsel for the Applicant in the disposed of matter.

The counsel for the Applicant was directed to assist the court on point of maintainability of the application.

Learned counsel for the Applicant reiterated the contents of the application and argued that this Hon'ble Court may be pleased to reciew the order dated 28.01.2021 as the Hon'ble Court has dismissed the application under section 151 of CPC and declared that such order dated 15.08.2015 was not passed by this court and this court is not empowered to clarify the said order it is prayed that this Hon'ble court being the predecessor court of the said court can amend/change/alter/modify/clarify the order dated 15.08.2018 in which the Hon'ble court has declared that the applicant as parents/guardian of minor baby sonya and also declared irrevocable release of minor baby girl Sonya to the applicant. Hence prayed that this Hon'ble Court may be pleased to review the order dated 28-01-2021 and clarify that the "Irrevocable release" means that the natural parents of the child are hereby explicitly and unconditionally divested of all parental rights over the child.

Heard the learned counsel for the Applicant and perused the material available on record.

From perusal of record it is reflected that the Applicant filed the instant main G & W Application for her appointment as legal guardian of the minor namely Baby Sonya and this court vide its order dated: 30-10-2019 appointed the Applicants as the legal guardian. Record further revealed that prior to the guardianship application No. 1414 of 2019 applicants were also declared as parents/ guardians and "irrevocable release" of minor baby girl Sonya to applicants was also allowed vide order dated 15.08.2018 and obviouslysuch irrevocable release was entrusted or awarded, when the natural parents of the child explicitly and unconditionally divested of all parental rights over the child.

It is clear that the prayer for amend/ change/ alter/ modify/ clarify the order dated 28.01.2021 by the counsel for the Applicant is seeking to review of the order and the Family Court do not have the power to review its own order. It is observed in case cited as 1983 CLC 2365 and 1999 YLR 882 the applicability of provision of Civil Procedure Code are barred with the exception to section 10 and section 11 CPC. There is no provision for review is available under the West Pakistan Family Court Act, 1964 as the right of review is a substantive right which cannot be invoked unless same has been provided by the statue itself. It has been held that review is substantive right and not matter of

54

procedure and same emanates from the statue and would not be available unless same has been conferred by the law. Here, reliance is placed on the following judgments passed by the Hon'ble Superior Courts regarding review by Family Courts;

**PLD 1996 Lah 394:**

"*West Pakistan Family Court Act 1964 being a procedural law there is no provision for review of an order passed by the Family Court.*"

**2007 YLR 3316:**

"*Power to review is not available to family court constituted under West Pakistan Family Court Act, 1964,*"

In view of above facts and circumstances, the court does not have the power to review its own order. The instant application cannot be entertained, therefore dismissed summarily.

<u>**ANNOUNCED IN OPEN COURT.**</u>
Given under my hand the seal of this Court.
Today on this 10th day of Febuary , 2021.

**(HUMAIRA OTHO)**
**XX Civil Judge & J.M, Karachi South.**

55